FILED

2012 Nov-29  PM 05:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

**DANIEL JEROME ALEXANDER,** )
)
**Plaintiff,** )
)
**v.** )          **CIVIL ACTION NO.:**
)          **2:11-CV-3259-VEH**
**MICHAEL J. ASTRUE,** )
**Commissioner of Social Security** )
**Administration,** )
)
**Defendant.** )

## MEMORANDUM OPINION

Plaintiff Daniel Jerome Alexander (hereinafter "Mr. Alexander") brings this action pursuant to 42 U.S.C. §§ 405(g) & 205(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), which denied his application for Supplemental Security Income (hereinafter "SSI"). Mr. Alexander timely pursued and exhausted his administrative remedies available before the Commissioner. The case is ripe for review pursuant to 42 U.S.C. §§ 405(g) & 205(g) of the Social Security Act.[1]

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits ("DIB") or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Alexander was a 43-year-old man at the time of his hearing before the administrative law judge (hereinafter "ALJ"). (Tr. 91).  He was educated through the fifth grade. (Tr. 114).  He has no past relevant work. (Tr. 56-57, 110-11, 127-36). Mr. Alexander claims he became disabled on October 14, 2008, due to diabetes and vision loss. (Tr. 110).

Mr. Alexander filed a Title XVI application for SSI on October 14, 2008. (Tr. 61, 91-93).  The claim was denied by the Commissioner on February 24, 2009. (Tr. 62-67).

Mr. Alexander filed a timely written request for a hearing on March 27, 2009. (Tr. 70-72).  The hearing was held on August 11, 2010. (Tr. 26-60). The ALJ concluded that Mr. Alexander was not disabled and denied his application on November 2, 2010. (Tr. 12-25).

On November 9, 2010, Mr. Alexander requested that the Appeals Council review the ALJ's decision. (Tr. 10). An appellate brief and additional evidence were submitted on May 25, 2011. (Tr. 147, 151-55). The Appeals Council denied this request on July 12, 2011. (Tr. 1).

Mr. Alexander filed a Complaint on September 9, 2011, which asks this court to review the ALJ's decision. (Doc. 1).  This court has carefully considered the record and affirms the decision of the ALJ.[2]

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.  The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id*.  Substantial evidence is "more than a scintilla, but less than a preponderance."  *Id*.  Factual findings that are supported by substantial evidence must be upheld by the court.  The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  *Davis v. Shalala*,

---

[2] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through September 13, 2012.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

(1)  whether the claimant is currently employed;
(2)  whether the claimant has a severe impairment;
(3)  whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)  whether the claimant can perform her past work; and
(5)  whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

"Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job."  *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show that such work exists in the national economy in significant numbers.  *Id*.

5

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

At step one, the ALJ found that Mr. Alexander had not engaged in substantial gainful activity since October 14, 2008, his application date. (Tr. 17). At step two, the ALJ found that Mr. Alexander had the following severe combination of impairments: diabetes mellitus, hypertension, and disorders of the left foot. (*Id.*) At step three, the ALJ found that Mr. Alexander's impairments – taken separately or in tandem – did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20).

The ALJ next determined Mr. Alexander's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. 20 C.F.R. § 416.945. The ALJ found Mr. Alexander capable to perfrom a wide range of medium work[4] as defined in 20 C.F.R. § 416. 1567(c). (Tr. 21). For example, the ALJ found that Mr. Alexander could frequently lift or carry 25 pounds, occasionally lift or carry 50 pounds, sit for 6 hours of an 8-hour workday, and stand or walk for 6 hours of an 8-hour workday (*Id.*). He also found that Mr. Alexander could never climb ladders, ropes, and scaffolds, but could frequently perform all other postural activities, should avoid concentrated exposure to

---

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416. 1567(c).

hazards, could not do fine detailed work such as working with small items like screws, and could not do any commercial driving. (*Id*.).

At step four, the ALJ determined that Mr. Alexander had not performed any past relevant work. (Tr. 24). At step five, a vocational expert ("VE") attended Mr. Alexander's hearing and testified that a hypothetical individual of Mr. Alexander's age, education, work experience, and RFC could work as an industrial cleaner, hand packager, and auto detailer. (Tr. 57-58). Given this testimony and the evidence of the record, the ALJ determined Mr. Alexander could perform other jobs that exist in the national economy. (Tr. 25). Accordingly, the ALJ determined that Mr. Alexander had not been under a disability, as defined in the Social Security Act, since October 14, 2008, the date on which his SSI application was filed. (*Id*.)

## ANALYSIS

The court can reverse a finding of the Secretary if it is not supported by substantial evidence.  42 U.S.C. § 405(g).  The court has the "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding."  *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th

Cir. 1980)).[5]  Mr. Alexander asserts that (1) the ALJ's decision is not supported by substantial evidence and (2) improper legal standards were applied. (Doc. 8 at 1). In its review, this court finds that the ALJ's decision was supported by substantial evidence and that the ALJ applied the law correctly.

## I.   SUBSTANTIAL EVIDENCE SUPPORTS THE COMMISSIONER'S DECISION THAT MR. ALEXANDER FAILED TO MEET HIS BURDEN OF SHOWING THAT HE WAS DISABLED.

The burden of showing disability rests with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). If, however, the claimant shows he or she cannot perform past relevant work, the Commissioner must show the claimant can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.960(c)(2). An ALJ may satisfy this standard by introducing VE testimony that a hypothetical individual of the claimant's age, education, work experience, and RFC can perform other jobs in the national economy. *See* 20 C.F.R. § 416.966(e); *Wilson v. Barnhart*, 284 F.3d 1219, 1227-28 (11th Cir. 2002). Here, the ALJ properly relied on VE testimony to determine Mr. Alexander could perform other jobs and, therefore, was not disabled. (Tr. 24-25, 56-57).

---

[5]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Mr. Alexander argues, specifically, that the medical evidence before the ALJ did not support the ALJ's severe impairment findings. (Doc. 8 at 8). Additionally, he contends that the ALJ did not adequately consider all of Mr. Alexander's impairments in combination, and that new and material evidence of significant eye impairments prior to the ALJ's decision supports Mr. Alexander's allegations of blurry vision and establishes that the ALJ's severe impairment as well as RFC findings are not substantially supported. (Doc. 8 at 8-9).

Mr. Alexander asks that the ALJ decision be vacated and reversed for legal error, and benefits awarded. (Doc. 8 at 9). In the alternative, Mr. Alexander requests this his case be remanded for further development and proceedings to include clarification of his RFC by obtaining a consultative examination with medical source opinion.  (*Id.*).

## A.    The ALJ Considered All of Mr. Alexander's Impairments and Their Combined Effect.

An ALJ's "specific [] state[ment]" that a claimant does not have an "impairment or combination of impairments [that meets or equals a listed impairment]" sufficiently demonstrates the ALJ considered the combined effect of a claimant's impairments. *Wilson*, 284 F.3d at 1224-25. The ALJ determined Mr. Alexander's diabetes mellitus, hypertension, and disorders of the left foot were a "severe combination of impairments." (Tr. 17). The ALJ also determined Mr.

9

Alexander did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 20).

Further, in determining Mr. Alexander's RFC, the ALJ discussed Mr. Alexander's left foot disorders, diabetes, hypertension, and claims of dizziness, fatigue, chest pain, and blurry vision. (Tr. 22-24). The ALJ's findings and discussion of Mr. Alexander's impairments "constitute [] evidence" that the ALJ considered the combined effect of Mr. Alexander's effects. *Wilson*, 284 F.3d at 1224-25; *see Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (finding ALJ's reference to claimant's combination of impairments "evidence[d] consideration" of the impairments' combined effect).

Mr. Alexander raises three challenges on this point. First, citing the ALJ's discussion of his severe impairments, Mr. Alexander asserts the ALJ's "ultimate severe impairment findings" are inconsistent with "his conclusions in the rest of this decision." (Doc. 8 at 5). The ALJ determined Mr. Alexander's severe impairments included diabetes mellitus, hypertension, and disorders of the left foot. (Tr. 17). This determination is consistent with the ALJ's "expanded" (Doc. 8 at 5) and more detailed discussion of these impairments. (Tr. 19-24).

Second, Mr. Alexander suggests the ALJ did not pose a complete hypothetical question to the VE. (Doc. 8 at 6). "[F]or a [VE's] testimony to

constitute substantial evidence [that the claimant can return to his past work], the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (quoting *Wilson*, 284 F.3d at 1227). An ALJ does not have to include limitations in the hypothetical that he properly finds are unsupported. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). An ALJ also does not have to include every alleged symptom of the claimant in the hypothetical question. *See Ingram*, 496 F.3d at 1270 ("The characteristics that the [ALJ] omitted are among those that Ingram alleged to suffer but were either not supported by her medical records or were alleviated by medication."). Similarly, an ALJ does not have to list the claimant's underlying diagnoses. *See Moore*, 405 F.3d at 1208 ("A proper hypothetical need not set forth medical diagnoses; rather, it must contain a claimant's physical or mental limitations."). The ALJ's hypothetical question to the VE included all the restrictions accepted as credible by the ALJ and included in the RFC. (Tr. 21, 57).

Third, substantial evidence supports the ALJ's determination that Mr. Alexander's obesity was not a severe impairment. Obesity is a "severe" impairment only if it "significantly limits an individual's physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a). The Eleventh Circuit has held

that "the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. *See* 20 C.F.R. § 416.921(b)(2)-(6). The claimant bears the burden of proving he has a severe impairment or combination of impairments. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

The ALJ considered Mr. Alexander's weight and diagnosis of obesity. (Tr. 17-18, 40, 158). As the ALJ observed, Mr. Alexander did not claim his obesity was disabling and did not report any limitations or symptoms from this condition to his physicians. (Tr. 20); 20 C.F.R. § 416.929(c)(3)(v) (permitting the ALJ to evaluate claimant's alleged symptoms based on the treatment he or she has received for them). The ALJ found that though Mr. Alexander testified he could only stand 5-10 minutes at a time, Mr. Alexander conflictingly reported that he went shopping and looked for "odd jobs in peoples yards" in his Function Report, and that he did, in fact, do  yard work for others in February 2009. (Tr. 22, 117-26, 177).

In addition, though Mr. Alexander testified he used a cane or walking stick at times, the record, to the contrary, reveals that Mr. Alexander had no prescription

for such by a doctor and that Mr. Alexander reported he did not use an assistive device in his Function Report.

Dr. Melvin Williams ("Dr. Williams") also indicated Mr. Alexander did not use an assistive device in February 2009. (Tr. 179). Dr. Williams examined Mr. Alexander in February 2009 and observed that Mr. Alexander had largely normal musculoskeletal ranges of motion. (Tr. 20, 179-80). Further, Mr. Alexander stated to Dr. Williams that he does "some cleaning up" and does odd jobs, such as "working in someone's yard." (Tr. 177).

This court has ruled on the issue of obesity before. *See Rivers v. Astrue*, No. 6:07-CV-1001-VEH (N.D. Ala. February 12, 2008) (Doc. 8).  As in *Rivers*, this court finds that while "obesity should be considered among other impairments," an ALJ does not commit reversible error by not considering it as such, if the record lacks evidence to support that obesity affects a claimant's ability to perform work-related activities. *Id.* (Doc. 8 at 12) (citing *Wind v. Barnhart*, 133 Fed. Appx. 684, 690-91 (11th Cir. 2005)).

Based upon the above reasons, the court finds that the ALJ properly considered the issue of Mr. Alexander's obesity in making his disability determination. The ALJ articulated his specific reasons for doubting Mr.

13

Alexander's testimony regarding obesity, and the evidence supports the ALJ's determination that this impairment was not severe.

**B.   Substantial Evidence Supports the Appeals Council's Denial of Mr. Alexander's Request for Review.**

Although Mr. Alexander claims the Appeals Council "made no comment on" the additional evidence, the Appeals Council informed Mr. Alexander that it considered the evidence. (Doc. 8 at 8); (Tr. 1-2). The Appeals Council further stated the evidence did not provide a basis for changing the ALJ's decision. (Tr. 1-2). Mr. Alexander's claim that the Appeals Council did not comment on this evidence is incorrect. *See Ingram*, 496 F.3d at 1261-62 (rejecting argument that Appeals Council did not consider additional evidence as 'flatly contrary to the record and easily dismissed").

Moreover, substantial evidence supports the Appeals Council's decision to deny Mr. Alexander's request for review. "[W]hen a claimant properly presents new evidence to the Appeals Council [and it denies review], [then] a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Id.* at 1262. In finding Mr. Alexander was not disabled, the ALJ acknowledged Mr. Alexander's vision problems resulting from his diabetes and "included visual limitations" in Mr. Alexander's RFC "due to his blurred vision and retinopathy." (Tr. 23). The ALJ determined Mr. Alexander could not perform

14

work involving commercial driving and fine detailed work such as working with small items like screws. (Tr. 21).

The additional evidence does not contradict this evaluation of Mr. Alexander's visual limitations, much less render the ALJ's decision that Mr. Alexander was not disabled erroneous.[6] This supplemental evidence shows Mr. Alexander visited Callahan Eye Foundation four times in October and November 2011. (Tr. 151-55). On October 18, 2011, after being diagnosed with proliferative diabetic retinopathy[7] and bleeding (vitreous or preretinal heme) in his right and left eyes (OD and OS), Mr. Alexander was scheduled to receive an Intravitreal Avastin injection ("IVA")[8] and a panretinal photocoagualation laser treatment ("PRP")[9] for

---

[6]Although Mr. Alexander claims the additional evidence "would affect" several of the ALJ's findings (Doc. 8 at 9), the relevant standard is whether the evidence rendered the ALJ's decision denying benefits erroneous. *Ingram*, 496 F.3d at 1262.

[7]"Diabetic retinopathy is a complication of diabetes that results from damage to the blood vessels of the light-sensitive tissue at the back of the eye (retina)." Mayo Clinic (visited October 31, 2012) http://www.mayoclinic.com/health/diabetic-retinopahty/DS00447. At the proliferative stage of this condition, new blood vessels in the eye sprout abnormally, bleed, or rupture, which may damage the retina or block light from reaching it. MedlinePlus (visited October 31, 2012) http://www.nlm.nih.gov/medlineplus/tutorials/diabeteseyecomplications/db019104.pdf.

[8]"Intravitreal Avastin (here called IVA) is an injection of the anti-VEGF drug Avastin into the vitreous cavity of your eye." University of Birmingham (visited October 31, 2012) http://medweb.bham.ac.uk/easdec/avastinpatients.htm. "An anti-VEGF drug can help reduce the growth of ... abnormal blood vessels." eyeSmart, American Academy of Opthamology (visited October 31, 2012) http://www.geteyesmart.org/eyesmart/diseases/diabetic-retinopathy-treatment.cfm.

[9]PRP stands for panretinal photocoagulation, a laser treatment for diabetic retinopathy that shrinks abnormal blood vessels in the eye. Mayo Clinic (visited October 31, 2012) http://www.mayoclinic.com/health/diabetic-retinopathy/DS00447/DSECTION=treatments-and-

his left eye. (Tr. 155). On November 1, 2010, Mr. Alexander complained of decreased vision in his right eye, was prescribed eye drops, and received IVA and PRP for his left eye. (Tr. 154). Mr. Alexander returned two weeks later to receive the same procedure for his right eye, but was unable to wait for the procedure. (Tr. 153). On November 17, 2010, Mr. Alexander reported his vision in his right eye had improved. (Tr. 152). That same day, Mr. Alexander received IVA and PRP in his right eye with no complications. (Tr. 151-52).

This evidence documents conditions that the ALJ had already considered. The ALJ acknowledged Mr. Alexander's retinopathy and accounted for this condition in the RFC determination. (Tr. 21, 23). Although Mr. Alexander notes his diagnoses of proliferative diabetic retinopathy and vitreous and retinal bleeding, Dr. Deisadie Callins ("Dr. Callins") considered these conditions and rated Mr. Alexander's visual impairment as "02", meaning it was "not severe." (Doc. 8 at 7-8); (Tr. 182, 174). Accordingly, this new evidence does not render the ALJ's decision erroneous, and the Appeals Council properly denied Mr. Alexander's request for review.

---

drugs.

**C.    The Record Contains Sufficient Evidence for the ALJ to Determine Mr. Alexander Was Not Disabled.**

The evidence is sufficient to support the ALJ's disability determination without a medical source statement ("MSS") from a physician. Mr. Alexander did not challenge the sufficiency of the evidence before the ALJ. (Doc. 8 at 1-9). Additionally, this Court has noted that an MSS from a physician is not required in every case when other evidence in the record is sufficient to support the ALJ's disability determination even in the absence of a MSS. *See Prewitt v. Astrue*, No. 7:11-CV-2577-VEH (N.D. Ala. Sep. 28, 2012) (Doc. 11 at 16).

As recognized in *Prewitt*:

[T]here is no requirement that an ALJ rely on a medical source's opinion in determining a claimant's RFC. As this court has previously noted, neither the Eleventh Circuit nor this Court has adopted a bright line test to determine whether the lack of a treating physician's MSS as to a claimant's functional ability calls for a remand. *Rose v. Astrue,* No. 11-CV-1186-VEH, 2011 U.S. Dist. LEXIS 155487, (Doc. 10 at 17-18) (N.D. Ala. Nov. 1, 2011); *Eljack v. Astrue,* 2012 U.S. Dist. LEXIS 86804, 2012 WL 2476405 (N.D. Ala. Jun. 22, 2012). In some cases, a treating physician's MSS is necessary. *See Clemmons v. Astrue,* No. 3:06-CV-1058-VEH, slip op. at 11 (N.D. Ala. Jun. 11, 2007); *Coleman v. Barnhart*, 264 F. Supp. 2d 1007, 1010 (S.D. Ala. 2003). In others, it is not. *See, e.g., Green v. Social Security Administration*, 223 Fed. App'x 915, 923 (11th Cir. 2007) (ALJ discounted a treating physician's opinion regarding claimant's functional abilities and limitations, but there otherwise remained substantial evidence to find the claimant not disabled); *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (lack of a treating physician's medical opinion did not invalidate the ALJ's RFC assessment because there existed substantial evidence, outside the

17

objective medical evidence, supporting such); *Dudley v. Astrue*, No. 3:06-CV-1286-VEH (N.D. Ala. Apr. 24, 2007) (similar); *Cash v. Astrue*, No. 5:07-CV-0952-VEH (N.D. Ala. May 15, 2008) (similar).

*Prewitt*, No. 7:11-CV-2577-VEH (Doc. 11 at 14-15).

"In sum, the outcome of these cases turns upon the sufficiency *vel non* of other evidence in the record that supports the ALJ's RFC determination even in the absence of a MSS from the claimant's treating physician." *Malone v. Astrue*, No. 5:07-CV-2351-VEH, slip op. at 26 (N.D. Ala. Jul. 24, 2008).

Based on the particular facts and circumstances of this case, including Mr. Alexander's not so complex set of conditions, the court does not find that an RFC from a medical doctor was necessary to substantially support the ALJ's decision. While an ALJ properly considers medical opinions of record in assessing a claimant's RFC, such source evaluations are different from an administrative RFC assessment. *See* 20 C.F.R. §§ 404.1513(b)(c), 416.913(b)(c), 404.1527(b)(c), 416.927; SSR 96-5p, 1996 SSR LEXIS 2, 1996 WL 374183. "A medical source statement is evidence that is submitted to [the Commissioner] by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." SSR 06-5p, 1996 SSR

LEXIS 2; *see* 20 C.F.R. §§ 404.1545, 416.945, 404.1546(c), 416.946(c). Indeed, the RFC is an issue reserved for determination by the ALJ and, even when a medical source submits an opinion for a claimant's RFC, it is not entitled to special significance. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); *see* SSR 96-5p, 1996 SSR LEXIS 2.

The ALJ upheld his duty to consider the medical and other evidence of record in making his assessment of Mr. Alexander's RFC. (Tr. 17-25); 20 C.F.R. §§ 404.946(c), 404.1546(c), 404.1513(b), 416.913(b), 404.1527, 416.927, 404.1545, 416.945. In particular, here the court finds that the overall record enabled the ALJ to properly discern Mr. Alexander's RFC without the benefit of relying upon an underlying RFC from a medical source.

In terms of Mr. Alexander's alleged foot problems, the ALJ limited Mr. Alexander to lifting up to 50 pounds, standing or walking for 6 hours of an 8-hour workday, and never climbing ladders, ropes, and scaffolds. (Tr. 22). The ALJ also noted that, despite Mr. Alexander's numerous complaints about foot problems, multiple examinations revealed normal gait, ankle motion, and extremity strength. (*Id.*). Furthermore, Mr. Alexander denied a foot injury in October 2009. (*Id.*).

As for Mr. Alexander's allegations that he experienced dizziness, fatigue, chest pain, and blurry vision due to diabetes and hypertension, the ALJ limited Mr.

Alexander to performing medium work that does not involve working with small items, commercial driving, exposure to hazards, or climbing ladders, ropes, and scaffolds. (*Id.*).

Also, Mr. Alexander's subjective allegations are inconsistent with respect to his treatment history for the aforementioned disorders. Notes from July 2010 report no blurred vision and the record reveals no specialized treatment for Mr. Alexander's eye problems as would be expected of someone with significantly limiting eye difficulties. (Tr. 23, 270).

Moreover, the record reveals Mr. Alexander had not been compliant with prescribed diabetes medication. (Tr. 23, 156-71, 270-87). Such would not be expected of someone with significantly limiting diabetic symptoms. In addition, Mr. Alexander reported he looked for "odd jobs in peoples yards," shopped, had no problems with personal care, prepared his own meals, attended church weekly, did household chores, and had no problems lifting, bending, climbing stairs, and concentration in his Function Report. (Tr. 23, 117-26).

Thus, the ALJ's finding is supported by substantial evidence, including Mr. Alexander's limited and successful treatment history, Dr. Williams's medical findings, the findings of consultative examiner Dr. Callins, and Mr. Alexander's subsequent daily activities and work performing odd jobs and yard work. (Tr. 17-

25). The ALJ clearly set forth Mr. Alexander's abilities and limitations in the decision. (Tr. 21). Given the depth and explicitness of the ALJ's considerations, there is substantial evidence that the ALJ's RFC determination is supported by substantial evidence, and the ALJ fully and fairly developed the record.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is supported by substantial evidence and applies the proper legal standards. Accordingly, the decision of the Commissioner will be affirmed by separate order.

**DONE** and **ORDERED** this the 29th day of November, 2012.

**VIRGINIA EMERSON HOPKINS**
United States District Judge